# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 21-CR-105-JPS |
| v. | |
| LATHEMA NASH, | **ORDER** |
| Defendant. | |

      This matter comes before the Court on Defendant Lathema Nash ("Nash")'s objection to Magistrate Judge William E. Duffin's Report and Recommendation (the "R&R") denying her motion to dismiss the Indictment. ECF Nos. 17, 22. The Government charged Nash with a single count of knowingly making a false and fictitious written statement in order to purchase a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). ECF No. 1. Nash argues that the form she signed, which gave rise to this charge, is fundamentally ambiguous and incapable of being intelligently answered. ECF No. 24. For the reasons explained below, the Court will overrule Magistrate Judge Duffin's R&R and grant the motion to dismiss the Indictment.

**1.      LEGAL STANDARD**

      When reviewing a magistrate's recommendation, this Court is obliged to analyze *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* The

Court's review encompasses both the magistrate judge's legal analysis and factual findings. *Id.*; *see also* Fed. R. Crim. P. 59(b).

2. **FACTUAL BACKGROUND**

On July 9, 2020, Nash went to The Shooter Shop, a licensed firearms dealer in West Allis, Wisconsin. She bought two guns, both Taurus model G2s 9-millimeter handguns. One gun was for herself; it is not clear from the Indictment who the other gun was for, but the Indictment charges that she was "acquiring the firearm for someone else." ECF No. 1.

In connection with her purchases, The Shooter Shop asked Nash to fill out a single Alcohol, Tobacco, and Firearms ("ATF") Form 4473, titled "Firearms Transaction Record," (the "Form"). Nash filled out Sections A–C, which requested personal identifying and background information. Her answer to Question 11.a gave rise to the Indictment:



The seller at The Shooter Shop filled out Section D, which provides a place to list the types of firearm(s) purchased, as well as the number of guns to be purchased:



The Government charged Nash with making a false statement in connection to the second gun, Serial Number ABE615751, which went to

Page 2 of 12

"someone else." ECF No. 1. The Government has not charged her with making a false statement in connection with the first gun, Serial Number ABE622478.

Nash contends that there are four possible situations in which a person might find herself when she reads Question 11.a. Such a person may be seeking to buy,

> (1) a single gun for herself;
> (2) multiple guns for herself;
> (3) multiple guns for someone else; or
> (4) multiple guns, one or more for herself and one or more for someone else.

ECF No. 24 at 1. Nash argues that Question 11.a is logically impossible to answer when a person falls in the fourth category, i.e., when she buys multiple guns, some of which are for herself, and some of which are for someone else. Under those circumstances, she cannot answer Question 11.a in a 100% truthful (or 100% false) manner because the Form provides only the option of answering "Yes" or "No." Thus, if such a purchaser had said, "No," that, too, would have been partially false, because one of the firearms *was* for herself. Nash argues that the question was fundamentally confusing—as demonstrated by her initial answer of "No," which she subsequently crossed out, initialed, and answered Yes."

Magistrate Judge Duffin acknowledged the general principle that the questioner is responsible for asking sufficiently specific questions, but he concluded that Question 11.a was, indisputably, an all-or-nothing question. Nash objects to the all-or-nothing characterization because in one of four purchasing scenarios (i.e., when a person buys one or more guns for herself and one or more guns for someone else), either a "Yes" or "No" answer would be partially true and partially false, and thus, theoretically, either

answer would be an indictable offense. In other words, even if the question sought an all-or-nothing answer, it was impossible to provide such an answer under the circumstances.

3. ANALYSIS

    3.1    Legal Background

The same principles that govern perjury charges also apply to false statement charges. *See United States v. Rahman*, 805 F.3d 822, 838 (7th Cir. 2015) (evaluating the sufficiency of a false-statements conviction under *Bronston v. United States*, 409 U.S. 352 (1973)). In 1973, the Supreme Court held that a witness's literally true but incomplete and non-responsive testimony in a bankruptcy proceeding did not amount to perjury. *Bronston*, 409 U.S. 352. At a hearing on June 10, 1966, a creditor asked Bronston the following questions, which elicited the following answers:

> 'Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?
> 'A. No, sir.
> 'Q. Have you ever?
> 'A. The company had an account there for about six months, in Zurich.

*Id.* at 354. But Bronston *did* have a personal bank account in Switzerland between 1959 and 1964. Nevertheless, the Supreme Court held that "petitioner's answers were literally truthful"—even the second answer, which "impli[ed] . . . that there was never a personal bank account." *Id.* at 354, 357. The Court found that perjury would be a "dramatic sanction" for a "mishap that could readily have been reached with a single additional question by counsel[.]" *Id.* at 358. Indeed, "so long as the witness speaks the literal truth[,] [t]he burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Id.* at 360. Notably, the

Supreme Court did not focus on whether the question itself was inherently confusing but assumed, for the sake of its conclusion, that it was "specifically focused on petitioner's personal bank accounts." *Id.* at 357.

The Seventh Circuit has embraced *Bronston*'s line of reasoning in related cases. In *United States v. Rahman*, the Seventh Circuit reversed a denial of a motion for judgment of acquittal because the Government did not meet its burden in proving that the defendant made a false statement to federal officials. 805 F.3d at 838. During an arson investigation, the defendant told ATF agents that he kept a laptop containing business records in the basement of his restaurant. *Id.* at 837. Investigators ultimately found a laptop in the defendant's home that did *not* contain business records, and the false statement charge arose. *Id.* at 837–38. The Seventh Circuit held that the existence of the defendant's laptop at home did not foreclose the possibility (documented in evidence) of a second laptop at work containing business records. *Id.* at 839. It further explained that "[a] criminal conviction is a drastic sanction when no questioner pinned [the defendant] down to which laptop he was referring." *Id.* at 839.

Similarly, in *United States v. Laikin*, the Seventh Circuit overturned a perjury conviction because "the questions asked of defendant on the two occasions were objectively not the same and hence admitted of different answers consistently with the 'literal truth' standard of *Bronston*." 583 F.2d 968, 970 (7th Cir. 1978). The Seventh Circuit acknowledged that "[i]t may well be that petitioner's answers were not guileless but were shrewdly calculated to evade" the information that the Government sought. *Id.* at 971. Nonetheless, "the Government did not ask him [a] precise question, and defendant was not required to answer the unasked question." *Id.*

In *Manapat*, the Eleventh Circuit considered a fact pattern similar to the facts in this case and affirmed the dismissal of an indictment. There, an applicant made two totally false statements in connection with two ambiguously placed questions on a background questionnaire. 928 F.2d 1097, 1099 (11th Cir. 1991). In concluding that the questions, as presented, were fundamentally ambiguous, the Eleventh Circuit articulated the standard used to evaluate ambiguous questions. It explained that questions that are "arguably ambiguous" must go to a jury to determine the defendant's interpretation or understanding of the question. *Id.* at 1099. But questions that are "fundamentally ambiguous" cannot sustain an indictment for false statements—such cases must be dismissed. *Id*. at 1099–1100. A question or phrase is fundamentally ambiguous when it

> is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.

*Id.* at 1100 (quoting *United States v. Lattimore*, 127 F. Supp. 405 (D.D.C. 1955) *aff'd by an equally divided court*, 232 F.2d 334 (D.C. Cir. 1955)); *see also United States v. Sarwari*, 669 F.3d 401, 407 (4th Cir. 2012) (explaining the importance of context in evaluating fundamental ambiguity). "When the question that led to the allegedly false response is fundamentally ambiguous, we cannot allow juries to criminally convict a defendant based on their guess as to what the defendant was thinking at the time the response was made." *Manapat*, 928 F.2d at 1101.

From these cases, the Court derives two principles relevant to the instant case. First, it incumbent on the questioner—in this case, the ATF—to pose questions, and follow-up questions, in a way that elicits accurate,

responsive, and comprehensive answers. *Bronston*, 409 U.S. at 362; *Rahman*, 805 F.3d at 838–39; *Laikin*, 583 F.2d at 970–71. Second, if a question is fundamentally ambiguous, then it cannot sustain an indictment for false statements. *Manapat*, 928 F.2d at 1101; *see also Bronston*, 409 U.S. at 362 ("[P]recise questioning is imperative as a predicate for the offense of perjury.").

### 3.2 Fundamental Ambiguity (or, Ambiguity as a Matter of Law)

The outcome of the motion to dismiss turns on whether Question 11.a is fundamentally ambiguous. If the ambiguity is only arguable (i.e., if what is at issue is merely the defendant's understanding or interpretation of the question), then it must go to a jury for a credibility determination. *Manapat*, 928 F.2d at 1100. But if "men of ordinary intellect" could not agree as to its meaning, or if it would be impossible for the questioner and answerer to come to a mutual understanding without "defin[ing] [the answer] at the time it were sought," then it is fundamentally ambiguous, and the charge must be dismissed. *Id*.[1]

---

[1] The Government points to two cases regarding the ambiguity of Question 11.a, both of which involved situations in which the buyer purchased *all* firearms for another person, in a true straw-man situation. *See United States v. Powell*, 467 F. Supp. 3d 360, 372–73 (E.D. Va. 2020) (holding that there was no fundamental ambiguity to Question 11.a's straw man prohibition and instructions, noting that one example in the instructions described the defendant's exact situation); *United States v. Wilson*, 175 F. App'x 294, 297 (11th Cir. 2006) (holding that the term "actual buyer" was not fundamentally ambiguous because the "plain language" of the Form explained that "an 'actual buyer' is one who either purchases a firearm for himself or for another as a gift"; thus, reasonable minds would agree that an "actual buyer" does not include people who buy firearms to resell them). These cases do not contemplate Question 11.a's ambiguity in the situation *sub judice*, where the only available answers to Question 11.a would result in a partially true, partially false statement.

Magistrate Judge Duffin analyzed Question 11.a's grammar and usage to determine whether it was fundamentally ambiguous. He wrote,

> [t]he question did not ask, "Are you the actual transferee/buyer of *a* firearm(s) listed on this form…?" or "Are you *an* actual transferee/buyer of the firearm(s) listed on this form …?" [Rather, it asked: Are you the actual transferee/buyer of the firearm(s) listed on this form . . . ?]
>
> The question obviously contemplated the purchase of multiple firearms in that each time "firearm" is used in the question i[t] appears with the parenthetical plural as "firearm(s)." (ECF No. 17-1 at 1.) The use of the definitive article "the" made clear that the question posed an all-or nothing proposition; a "Yes" answer was appropriate only if the person completing the form was purchasing *all* of the firearms for herself. In a transaction involving multiple firearms, if the transferee was not the actual purchaser of all of those firearms, the transfer could not proceed. It was unnecessary for the form to have asked, "Are you the actual transferee/buyer of *all* the firearm(s) listed on this form…?" as Nash suggests it could have (ECF No. 17 at 7). The addition of the word "all" may add emphasis but would not change the meaning.

ECF No. 22 at 3–4.

The Court respectfully disagrees with Magistrate Judge Duffin's analysis. The word "the" is a determiner "denoting one or more people or things already mentioned or assumed to be common knowledge." "The," *New Oxford American Dictionary* (3d ed. 2010).[2] Magistrate Judge Duffin

---

[2] *See also* "The," *Oxford English Dictionary*, https://www.oed.com/view/Entry/200211?rskey=0csh9T&result=2#eid ("Definite article (*determiner*); I. Referring to an individual item (or items) **\*** Marking an item as having been mentioned before or as already known, or as contextually particularized."); "The," *Cambridge English Dictionary*, https://dictionary.cambridge.org/us/dictionary/english ("used before nouns to

concluded that the Form must have used "the" to denote an all-or-nothing proposition because the Form could have used "a," but did not. But this conclusion layers a definition onto the humble word "the" that it simply does not have.

In this case, the Form uses "the" before the words "firearm" and "actual transferee/buyer" to denote "one or more of the people or things already mentioned"—i.e., the buyer who filled out the identifying information and the firearms that are the subject of the Form. The determiner "a" is used "when referring to someone or something for the first time in a text or conversation." "A," *New Oxford American Dictionary* (3d ed. 2010). Using "a" in Question 11.a—when the identity of the transferee/buyer has been established and the subject of the form is commonly understood to be the firearms to be transferred—would be odd. Thus, use of the word "the" in lieu of "a" does not introduce an all-or-nothing proposition. It merely indicates that the Question 11.a referred to previously identified or commonly understood people or things (the buyer, the firearm(s) subject to transfer).

Moreover, because the word "the" can be used to refer to "one or more" people or things, its use in Question 11.a does not make "clear that the question posed an all-or-nothing proposition." Far from it, in fact. Imagine, for example, that a host has a dinner party and makes two dishes. Guests add two more dishes to the table, so now there are four dishes.

---

refer to particular things or people that have already been talked about or are already known or that are in a situation where it is clear what is happening."); "The," *Merriam Webster Dictionary*, https://www.merriam-webster.com/dictionary ("used as a function word to indicate that a following noun or noun equivalent is definite or has been previously specified by context or by circumstance.").

Another guest asks the host, "Did you make the food?" The host would most likely say, "yes, some of it," but could also, in a moment of humility, say, "no, just these two items." "The food" does not clearly mean "all the food," it just refers to one or more of the food items assumed to be common knowledge. Accordingly, without an explanatory clause, the host could not 100% truthfully and accurately say either yes or no—while she did make some of the food, she did not make all of it. (Another way of looking at it: she could not 100% falsely say yes or no, either). The questioner and answerer must take another step before reaching a mutual understanding of what is being asked and answered. *Manapat*, 928 F.2d at 1100. On the other hand, if that same guest asked, "Did you make *all* of the food," the only appropriate answer would be, "no."

This example gets to the heart of why Magistrate Judge Duffin's grammatical explanation for the Form is unsatisfying, and why the question was ambiguous as a matter of law. It shows that there was no way for Nash to answer Question 11.a in a simple yes/no format: was she the actual buyer or transferee of the firearms that are the subject of the Form? Yes, for one of them; no, not for the second gun. Perhaps she was being evasive, or perhaps she was confused, but she had a basis in fact to provide either answer. As in the example above, to be fully truthful, both potential answers require an explanatory clause. If the Government sought an all-or-nothing response, then it should have phrased its question accordingly. *Bronston*, 409 U.S. at 360; *Laikin*, 583 F.2d at 970.[3]

Certainly, the Form contemplated a person purchasing more than

---

[3]For example: "Are you the actual transferee/buyer of all of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)?"

Page 10 of 12

Case 2:21-cr-00105-JPS   Filed 04/01/22   Page 10 of 12   Document 28

one firearm, hence the plural at the end of the word firearm(s). And there is no dispute that the Form seeks to cut down on straw-man purchases (although gifts appear to be permissible). But the Form does not contemplate a mixed-purchase situation in which one buyer purchases multiple firearms, only one of which is a straw-man purchase. Magistrate Judge Duffin's analysis does not account for the fact that, in such circumstances, answering Question 11.a truthfully and completely with a one-word answer is simply impossible. The Court must dismiss the Indictment because no matter how Nash answered the question, she would have answered it partially truthfully and partially falsely. *United States v. Rendon-Marquez*, 79 F. Supp. 2d 1361, 1363 (N.D. Ga. 1999).

The Government, in its response to Nash's objections, refers to Nash's "strong motive" to lie and says it was "more likely" that Nash crossed out the "No" in order to obtain the firearm, because she "knew what she was doing." ECF No. 25 at 3. But Nash's intent has nothing to do with whether Question 11.a is ambiguous as a matter of law. And because reasonable minds could differ as to how to answer Question 11.a, this matter cannot go to the jury: "[w]hen the question that led to the allegedly false response is fundamentally ambiguous, we cannot allow juries to criminally convict a defendant based on their guess as to what the defendant was thinking at the time the response was made." *Manapat*, 928 F.2d at 1101; *see also Bronston*, 409 U.S. at 359 ("A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner; the state of mind of the witness is relevant only to the extent that it bears on whether 'he does not believe (his answer) to be true.'") (citations omitted)).

From a logical standpoint, Nash had a basis in fact to answer either

Page 11 of 12

Case 2:21-cr-00105-JPS   Filed 04/01/22   Page 11 of 12   Document 28

"Yes" or "No" to Question 11.a as written. *See supra* at 9–11; *Laikin*, 583 F.2d at 971 ("It may well be that petitioner's answers were . . . shrewdly calculated to evade," but the "defendant was not required to answer the unasked question."). The Government's general allegations of motive, likelihood of deceit, and scienter do not cut to the heart of the issue before the Court, which is whether Question 11.a is fundamentally ambiguous (the Court's analysis makes clear that it is), and whether Nash should bear the felonious burden of a poorly phrased question (the case law makes clear that she should not). The Indictment must be dismissed.

Accordingly,

**IT IS ORDERED** that Magistrate Judge William E. Duffin's Report and Recommendation, ECF No. 22, be and the same is hereby **OVERRULED**;

**IT IS FURTHER ORDERED** that Defendant Lathema Nash's motion to dismiss the Indictment, ECF No. 17, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the Indictment be and the same is hereby **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 1st day of April, 2022.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge